Dear Mayor Brown,
Your request for an opinion of the attorney general has been forwarded to me for research and reply. According to your request, the Town of Haynesville (the "Town") has been approached by the Board of Claiborne Parish Fire District No. 3 (the "fire district") regarding a possible donation or transfer of ownership of the Town's fire station and three adjoining lots to the fire district. You ask whether such a donation is constitutionally permissible. You also ask whether the fire district would be prohibited from renovating and/or making improvements to the building in the event the two parties enter into a cooperative endeavor agreement.
Cooperative endeavor agreements are recognized by La.Const. art. VII, Sec. 14(C), which provides:
For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Cooperative endeavor agreements authorized by paragraph (C) must comply with the prohibition against gratuitous donations contained in La.Const, art. VII, Sec. 14(A), which provides: *Page 2 
Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
The seminal case interpreting this constitutional provision isCabela's, [1] in which the Louisiana Supreme Court held that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated."[2] In order to determine whether public funds have been "gratuitously alienated," our office has opined that: (i) the expenditure must be for a public purpose that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.
The public purpose behind the proposed cooperative endeavor agreement is to provide fire protection services to the residents of the Town. According to our telephone conversation, the fire station that the fire district currently occupies is too small and does not have adequate space for meeting and training areas. In addition, the stalls where the fire trucks are currently parked are too small for recently purchased fire trucks. Thus, you believe the proposed cooperative endeavor agreement would allow the fire district to provide better, more efficient fire protection services.
Before addressing whether the donation of the fire station and adjoining lots to the fire district is gratuitous, we point out that as a result of Cabela's, there is now a strong emphasis on the reciprocal obligations recorded between the parties in the cooperative endeavor agreement to ensure there is not a gratuitous donation of public funds. We note that in Cabela's, more than "services," which can be difficult to put a concrete value on, were being exchanged.[3] Instead, the parties *Page 3 
to the Cabela's agreement each undertook quantifiable, financial obligations. In light of the Cabela's case, we would recommend that the Town obtain an appraisal of the fire station and lots it would like to donate to the fire district in order to have an objective assessment of their value to ensure that the Town receives equivalent value for the property.
Without knowing the actual value of the fire station and adjoining lots or the value of the enhanced services the fire district would provide, we are unable to determine whether the Town will receive a benefit of equivalent value to the property it plans to transfer. As such, we are unable to definitively state that the proposed transfer is valid under Louisiana law. Nonetheless, in the event the Town is able to effectively demonstrate that it has a reasonable expectation of receiving a benefit at least equivalent to the amount expended or transferred, we believe the proposed transaction would be acceptable.
If the Town is unable to show that it would receive at least equivalent value for the properties transferred to the fire district, we note that La.R.S. 33:4712 would authorize the town to sell or lease the properties in question after determining that those properties were no longer needed by the Town for a public purpose. It provides, in pertinent part, as follows:
A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.
The procedure for selling or leasing property under this provision, as set forth in the remaining paragraphs of the statute, must be followed by the Town.[4]
Finally, you ask whether the fire district would be prohibited from renovating and/or making improvements to the building in the event the two parties entered into a cooperative endeavor agreement. If the Town determines it can enter into the cooperative endeavor agreement, then the issue of renovations and improvements should be expressly mentioned in the agreement. If the fire district purchased the building and adjoining lots pursuant to La.R.S. 33:4712, then, of course, it would be free to make whatever improvements and/or renovations it desired with its own funds. It the fire district leased the building *Page 4 
from the Town, the issue of improvements and/or renovations must be provided for in the lease.
If the Town decided to participate in the improvement/renovation process with fire district, it would be authorized to do so by La.R.S. 33:1324. This statute authorizes municipalities, such as the Town, and political subdivisions, such as the fire district, to enter into agreements that call for them to engage jointly in the improvement of any public project. It provides, in pertinent part, as follows:
Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
(1) Police, fire and health protection. . . .
Thus, the express language of La.R.S. 33:1324 specifically authorizes municipalities and political subdivisions to enter into agreements that call for them to engage jointly in the improvement of any public project, including fire protection. Such agreements may also contemplate the "joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement." The fire district has the authority to provide fire protection services to the Town. Accordingly, pursuant to La.R.S. 33:1324, we are of the opinion that the Town and the fire district have the authority cooperate in making improvements and/or renovations to the building. However, the Town must ensure that it receives commensurate value for any public funds it spends. In other words, the Cabela's analysis discussed above would be applicable even when cooperating under La.R.S. 33:1324. *Page 5 
We hope that this opinion has adequately addressed the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
Yours very truly,
JAMES D. "BUDDY" CALDWELL Attorney General
BY: __________________________ Lindsey K. HUNTER Assistant Attorney General
JDC/LKH/crt
[1] Board of Directors of the Industrial Development Board ofthe City of Gonzales, Louisiana, Inc. v. All Taxpayers, PropertyOwners, Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11 (the "Cabela's"
case).
[2] Cabela's, 938 So.2d at 20.
[3] Cabela's involved the use of Tax Increment Financing to build a Cabela's retail outlet. Bonds were issued to pay for the construction of the retail outlet and related public improvements and infrastructure. The bonds were secured by the pledge of incremental tax revenues by the State and the City of Gonzales. Several agreements were entered into by the parties to the project. Cabela's agreed to acquire land and build the retail outlet and related public improvements and infrastructure. Upon issuance of the bonds, Cabela's agreed to transfer the property and improvements to the Industrial Development Board of the City of Gonzales, Louisiana, Inc. The Board would then lease the property and facilities to Cabela's, and the lease would contain an option to purchase. Cabela's was to then manage the retail center. The agreements also called for additional development of adjacent property to attract complimentary retail and commercial ventures.
[4] In addition to the procedural requirements in La.R.S. 33:4712, when a political subdivision such as the fire district purchases property with a value greater than $3,000.00, La.R.S. 33:4712.10 requires an appraisal.
If the property is leased, the public lease law must be followed. La.R.S. 41:1211, et seq.